IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LEO L. DURAN,

     Petitioner,

v.                                     Civ. 11-816 JB/GBW

ATTORNEY GENERAL OF THE STATE OF
NEW MEXICO,

     Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on Petitioner's Application for a Writ of Habeas Corpus brought under 28 U.S.C. § 2254. *Doc. 1.* While Petitioner initially raised three claims in this Petition (*id.* at 6, 7, 9A-9C) (identified hereinafter as Claims One, Two, and Three), Petitioner subsequently voluntarily dismissed Claim One, relating to the unconstitutional selection of his trial jury. *Doc. 27* at 2. This order, therefore, relates only to Claims Two and Three, for ineffective assistance of counsel and conflict of interest respectively. Having reviewed the briefing and record in this matter, (*docs. 1, 8, 15, 17, 45, 54, 62, 66*), and conducted an evidentiary hearing as to certain grounds raised in Claim Two (*docs. 44, 50, 56, 57, 58, 61*), I recommend that the Court dismiss Petitioner's Petition.

I.   BACKGROUND

A.      The Underlying Criminal Case

On December 10, 2007, Petitioner, an inmate at the Curry County Adult

Detention Center (CCDAC) in Clovis, New Mexico, was involved in an altercation with

Mr. Jason Gillette, a fellow inmate.  *Record Proper* (*RP*)[1] at 24; *Doc. 15* at 2.  The

altercation occurred at the CCDAC just after the men had been in court together for

their respective arraignments.  *Doc. 8*, Ex. R.  Mr. Gillette had been arraigned on the

charges of criminal sexual penetration and contributing to the delinquency of a minor.

*Trial Transcript* (*TT*)[2] at 32:10-15.  While both men were in the booking area of the

facility, Petitioner, unprovoked, attacked Mr. Gillette, punching him in the face.  *RP* at

24.  Petitioner withdrew, as one witness reported, "laughing and saying he attacked

Gillette because he was a child molester."  *Id.*  The sequence of events was captured by a

surveillance camera.  *Id.* at 92.  Petitioner was charged with one count of assault with

intent to commit a violent felony and one count of aggravated battery.  *Id.* at 21.

On February 14, 2008, Petitioner was arraigned for the offense and Mr. Frederick

Reese was appointed as counsel. *Id.* at 3-6.  At the arraignment, Petitioner stated that he

did not want Mr. Reese to represent him because he believed Mr. Reese had a conflict of

interest. *Id.* at 6.  The prosecutor, Mr. Fred Van Soelen, explained to the court that Mr.

---

[1] Citations to the "Record Proper" or "RP" refer to the record proper from Petitioner's state court proceedings.  *See doc. 45*.
[2] Citations to the "Trial Transcript" or "TT" refer to the trial transcript rom Petitioner's October 23, 2008, state court criminal trial.  *See doc. 64*.

Reese had represented Petitioner in the past. *Id.* Mr. Reese was appointed over Petitioner's objection. *Id.* After the prosecution struck the initial appointed trial judge, Judge Teddy Hartley was appointed to preside. *Id.* at 14-15.

On March 6, 2008, Judge Hartley entered an ex parte order granting Mr. Reese's motion for a confidential forensic evaluation of Petitioner's sanity and ability to form specific intent at the time of the offense. *Id.* at 16. Dr. Richard Fink, Ph.D. was assigned to conduct the evaluation. *Id.* On July 7, 2008, Judge Hartley entered a stipulated order finding Petitioner competent to stand trial. *Id.* at 34.

On October 23, 2008, Petitioner had a one day jury trial. *Id.* at 36. At the beginning of the trial, Judge Hartley dismissed the assault with intent to commit a violent felony count. *TT* at 10:2-4, 11:8-16. During the state's case-in-chief, Mr. Reese established that Petitioner only hit Mr. Gillette once, and hit the victim with a closed fist, utilizing no weapons. *Id.* at 26:3-13, 33:19-25. Mr. Reese also established that despite losing two teeth, Mr. Gillette arguably did not suffer permanent, serious damage to his mouth. *Id.* at 37:18-39:8. The prosecution played the recording of the altercation for the jury, with witness Deputy Sandy Loomis narrating the events. *Id.* at 42:18-47:11. After Mr. Reese cross-examined Deputy Loomis, the state rested its case-in-chief. *Id.* at 49:10-11. Mr. Reese then apparently moved for a directed verdict.[3] First, he

---

[3] While Mr. Reese did not explicitly state that he was moving for a directed verdict, *see TT* at 51:18-21, a reading of the transcript shows that Judge Hartley and Mr. Chavez, the prosecutor, both treated the motion as a directed verdict. *Id.* at 53:17-18, 57:6-7.

noted that the charge of aggravated battery required a showing of great bodily harm.
*Id.* at 50:5-8.  He then pointed out that Mr. Gillette could speak intelligibly and eat
normally, indicating that his injury did not rise to the level of harm required by the
statute.  *Id.* at 50:16-23, 51:6-21, 54:16-21, 54:23-55:12, 55:19-56:1.  Judge Hartley denied
the motion.  *Id.* at 57:6-7.  After an extended bench conference, Mr. Reese then rested his
case and resubmitted his motion for directed verdict, which Judge Hartley denied. *Id.* at
59:1-3, 59:12-20.  In his closing argument, Mr. Reese reiterated that the sole source of
injury to Mr. Gillette was a single closed fist punch and that Mr. Gillette had not
appeared to suffer serious, permanent damage. *Id.* at 93:10-23, 95:20-96:21, 97:8-21.   The
jury found Petitioner guilty of aggravated battery with grave bodily harm under N.M.
Stat. § 30-3-5 (1978).  *RP* at 87, 95-96.  Petitioner was sentenced to eleven years
imprisonment.  *Id.*  at 131.

### B.    State Court Procedural Background

Petitioner filed a direct appeal of his conviction on February 5, 2009, challenging
whether the action taken and injuries caused (*i.e.* a single punch without any weapon
resulting in lost teeth), supported Petitioner's conviction.  *Doc. 8*, Exs. D, E.  The
appellate court proposed affirming Petitioner's conviction on April 15, 2009.  *Id.* Ex. F.
Petitioner then dismissed the appeal and waived his right to further appeal.  *Id.* Ex. G.
On August 13, 2010, Petitioner filed a Petition for Writ of Habeas Corpus in the Ninth
Judicial District Court of New Mexico, citing three grounds: 1) conviction by an

unconstitutionally selected jury; 2) ineffective assistance of counsel; and 3) conflict of interest. *Id.* Ex. K at 3-A to 3-N.  This petition was dismissed by Judge Hartley on August 13, 2010.  *Id.* Ex. L.  Petitioner then filed a Petition for Writ of Certiorari in the Supreme Court of New Mexico on August 27, 2010, requesting that the Court review Judge Hartley's ruling.  *Id.* Ex. M.  The Supreme Court remanded the matter to the Ninth Judicial District Court on October 21, 2010.  *Id.* Exs. O, P.  On May 12, 2011, Judge Hartley again dismissed Petitioner's Petition.  *Id.* Exs. R, S.  Petitioner appealed Judge Hartley's dismissal by petitioning for a writ of certiorari to the New Mexico Supreme Court on June 10, 2011.  *Id.* Ex. T.  As the basis for this writ, Petitioner again raised the same grounds cited in his August 13, 2010 Petition. *Id.*  This Petition was denied on August 5, 2011.  *Ex. V.*

### C.      Federal Court Procedural Background

Petitioner filed his § 2254 Petition on September 12, 2011, raising the three grounds asserted in his state petitions, namely: 1) violation of his constitutional rights in regards to the jury selected; 2) ineffective assistance of counsel; and 3) conflict of interest on the part of trial counsel. *Doc. 1*.  Respondent filed his Answer on November 8, 2011. *Doc. 8*.  I ordered supplemental briefing on February 17, 2012 (*doc. 15*) as to Petitioner's claim for ineffective assistance of counsel. *Doc. 15* at 12-13.  Petitioner responded on February 27, 2012.  *Doc. 17*.   On February 21, 2012, I ordered Petitioner to produce evidence to support Claim One.  *Doc. 16*.  Petitioner responded on March 1, 2012 (*doc.*

*18)* and Respondents responded to Petitioner's filing on March 8, 2012 (*doc. 21*).  In light of Respondents' filing, Petitioner agreed to dismiss Claim One.  *Doc. 27* at 2.

On May 10, 2012, I ordered a limited evidentiary hearing as to Petitioner's Claim Two to investigate defense counsel's failure to raise an insanity defense.  *Doc. 34*.  I further ordered the appointment of counsel for the Petitioner.  *Doc. 35*.  I held the evidentiary hearing on August 28, 2012.[4]  *Docs. 56, 61*.  Petitioner's appointed counsel filed a memorandum in support of Petitioner's Petition on October 12, 2012.  *Doc. 62*.  Respondent filed a response to this memorandum on December 10, 2012.  *Doc. 66*.

## II.   PETITIONER'S CLAIMS

As discussed above, because Petitioner voluntarily agreed to dismiss Claim One, I will only address Claims Two and Three (ineffective assistance of counsel for failure to raise an insanity defense and conflict of interest on the part of trial counsel).  In Claim Two, Petitioner asserts that trial counsel, Mr. Frederick Reese, was ineffective because Mr. Reese was aware of Petitioner's mental illness and failed to raise it as a defense at Petitioner's trial.  *Doc. 1* at 7-7B.  In Claim Three, Petitioner raises a second ineffective assistance of counsel claim premised on various alleged conflicts of interest: 1) Mr. Reese represented both Petitioner and Mr. Gillette at their arraignments; 2) Mr. Reese

---

[4] Prior to the date of the evidentiary hearing, Petitioner's counsel had moved to amend his Petition to add a claim that he had not been advised of a plea offer.  *See doc. 43*.  Petitioner also sought to expand the hearing to adduce evidence on this matter.  *See id*. I granted the motion to expand the hearing, but deferred the issue of amending the Petition.  *See doc. 50*.  However, at the hearing, Petitioner's counsel indicated that, after having reviewed additional documentary evidence, Petitioner was withdrawing any claim with respect to the plea agreement.  *Doc. 61* at 4:19-5:8.  Consequently, I recommend that Petitioner's Motion for Leave to Amend (*doc. 43*) be denied as moot.

had, in the past, represented of Mr. Gillette in another unrelated matter; 3) Mr.

Chandler Blair, who represented Petitioner temporarily[5], had also represented Mr.

Gillette; 4) Mr. Blair and Mr. Reese conspired with Ms. Marna N. Pyle-Trammel, Mr.

Gillette's private attorney, resulting in Mr. Reese's failure to raise the defense of mental

illness, in order to protect Curry County from liability, based on Ms. Pyle-Trammel's

familial relationship to Curry County Commissioner Lance Pyle.  *Id.* at 9-9C.

III.   LEGAL STANDARDS

   A.   28 U.S.C. § 2254

      Under 28 U.S.C. § 2254, a federal court may only grant a state prisoner's

application for writ of habeas corpus where the state prisoner is held in "in violation of

the Constitution or laws or treaties of the United States" and the prisoner has (with

certain exceptions not relevant here) exhausted state remedies.  28 U.S.C. § 2254 (a)-(c).

If a prisoner's claims have been adjudicated on their merits at the state court level, such

application can only be granted if the state court acted contrary to, or unreasonably

applied, "clearly established Federal law, as determined by the Supreme Court of the

United States" or if the state court's ruling "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding."  *Id.* § 2254(d)(1)-(2).  When reviewing the application, the federal court

---

[5] Mr. Blair apparently appeared on behalf of Mr. Reese for Petitioner for the entry of an order stipulating that Petitioner was competent to stand trial.  *RP* at 34.  Petitioner claims that Mr. Blair also appeared on behalf of Mr. Reese at a hearing to disqualify another judge assigned to the matter, although the record only shows that the prosecution moved to disqualify that judge. *See doc. 1* at 9-A; *RP* at 14-15.

must be "highly deferential" to the rulings of the state court.  *Woodford v. Visciotti*, 537

U.S. 19, 24 (2002).

Under § 2254(d)(1), the threshold inquiry is whether there is a clearly established

federal law as determined by a review of holdings of the Supreme Court. *House v.*

*Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).  A state court acts contrary to clearly

established federal law "if the state court applies a rule different from the governing

law set forth in [Supreme Court] cases, or if it decides a case differently than [the

Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535

U.S. 685, 694 (2002).  A state court unreasonably applies clearly established law where it

"identifies the correct governing legal principle from th[e Supreme] Court's decisions

but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v.*

*Smith*, 539 U.S. 510, 520 (2003) (citation omitted).

"Section 2254(d)(2) . . . is a daunting standard—one that will be satisfied in

relatively few cases."  *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011) (internal

quotation marks omitted).  While what constitutes an "unreasonable" determination

has not been definitively established by the Supreme Court, "a state-court factual

determination is not unreasonable merely because the federal habeas court would have

reached a different conclusion in the first instance."  *Wood v. Allen*, 130 S. Ct. 841, 849

(2010).  Rather, it is "whe[n] the state courts plainly misapprehend or misstate the

record in making their findings, and the misapprehension goes to a material factual

issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Byrd*, 645 F.3d at 1171-72.

As the Tenth Circuit further explained in *Byrd*, "[the federal habeas court's] standard of review changes if there has been no state-court adjudication on the merits of the petitioner's claim. In such situations, § 2254(d)'s deferential standards of review do not apply." 645 F.3d at 1166-67 (citations and quotation marks omitted). Where there is no state court adjudication on the merits, the federal habeas court should conduct a *de novo* review of the petitioner's habeas claim. *Young v. Sirmons*, 551 F.3d 942, 955 (10th Cir. 2008).

### B.    Ineffective Assistance of Counsel

It is clearly established federal law that the Sixth Amendment of the U.S. Constitution guarantees the right to effective assistance of counsel at trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). For Petitioner to succeed on his claims of ineffective assistance under § 2254(d)(1), he must demonstrate both that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Id*. at 687-88. For counsel's performance to fall outside the bounds of professional reasonableness, Petitioner must show that "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. To show prejudice,

Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  A court "may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292–93 (10th Cir. 1998).

To succeed on his ineffective assistance of counsel claim under § 2254(d)(2), Petitioner must demonstrate that the state court's factual determinations as to Petitioner's sanity at the time of the altercation and counsel's alleged conflicts of interest are objectively unreasonable in light of the evidence presented to the state court.  "'[A] determination of a factual issue made by a State court [is] presumed to be correct,' and the petitioner shall have 'the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Wood*, 130 S.Ct. at 845 (quoting  § 2254(e)(1)).

## VI.   THE STATE COURT ADJUDICATED PETITIONER'S CLAIM ON THE MERITS

Petitioner argues that the New Mexico Supreme Court did not address his claims on the merits, and therefore the deferential standard does not apply, because the state court denied him the opportunity to develop a record of his ineffective assistance of counsel claims.  *Doc. 62* at 17.   He appears to contend that *any* time the state court denies a petitioner the right to an evidentiary hearing, the state court's decision is no longer entitled to deferential review, relying on the Tenth Circuit's reasoning in *Wilson*

*v. Workman*.  In *Wilson*, the Tenth Circuit held that the Oklahoma Court of Criminal Appeals (OCCA) could not be held to have ruled on the merits of an ineffective assistance of counsel claim where it explicitly failed to consider proffered non-record evidence that supported the petitioner's claim.  577 F.3d 1284, 1291-92, 1300 (10th Cir. 2009).

The most significant flaw in Petitioner's argument results from the post-*Wilson* Supreme Court opinion in *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).  In *Richter*, the Court held that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id*. at 784-85.  A state court need not provide reasons for its decision – a summary denial of a petition is presumed to be adjudication on the merits.  *Id*. at 784. This presumption may be rebutted where a petitioner can show that it is more likely that the determination was made on some other basis.  *Id.* at 785.  Very recently, the Court has reaffirmed this presumption.  *See Johnson v. Williams*, --- S.Ct. ---, 2013 WL 610199 (2013).  In *Johnson*, the Court held that the presumption that a claim was "adjudicated on the merits" within the meaning of 2254 cases applies where the state court rejects some of a petitioner's claims but does not expressly address a federal claim.  *Id*. at *3.  As the Court explained, while the Richter presumption "is not irrebuttable," it "is a strong one that may be rebutted only in unusual circumstances."

*Id*. at *8.      To the extent that *Wilson* could be read to support Petitioner's broad

contention that whenever "a state court has denied the petitioner an evidentiary

hearing and the opportunity to develop the record, there has not been an adjudication

on the merits," such a holding does not survive *Richter* and *Johnson*.  To the contrary,

subsequent cases tend to indicate that *Wilson* may be limited to its particular facts.  *See*

*Lott v. Trammell*, 2013 WL 142067, at *43-*44 (10th Cir. 2013); *Black v. Workman,* 682 F.3d

880, 895 (10th Cir. 2012) (opining that earlier decision -- which, in a 2254 petition,

refused to give deference to state court decision because petitioner had been denied

evidentiary hearing in state court -- was "of questionable authority" in light of

subsequent Supreme Court precedent); *see Atkins v. Clarke*, 642 F.3d 47, 49 (1st Cir. 2011)

(holding that Supreme Court precedent inconsistent with argument that "a state court

has not adjudicated a claim on the merits unless it has given a full and fair evidentiary

hearing"); *cf.* Winston v. Pearson, 683 F.3d 489, 499-502 (4th Cir. 2012) (under the law of

the case doctrine, court declined to change contrary ruling which had come down

before *Richter*).

       In the end, the question is whether petitioner's ineffective assistance claim is one

of the unusual circumstances which would overcome the presumption that the state

court adjudicated it on the merits.  The record reflects otherwise.  Upon review of

Petitioner's initial petition for writ of certiorari, the Supreme Court remanded the

matter to Judge Hartley, ordering that he "fully consider petitioner's ineffective

12

assistance of counsel claims." *Doc. 8* Ex. O.   On remand, Judge Hartley issued a

"decision letter" denying Plaintiff's petition, in which he stated that he had "reviewed

this entire file" and explicitly considered and dismissed Petitioner's non-record

evidence of his psychological status and ineffective assistance of counsel.  *RP* at 295-96.

He concluded that "being the trial Court Judge who has specific memory of this case,

[he was] of the opinion that the issues raised by the Petitioner are not shown as a matter

of law to give rise to the necessity for any evidentiary hearing." *Id*.  The Supreme Court

then denied the Petitioner's subsequent petitioner for writ of certiorari after "having

considered said petition and response, and **being sufficiently advised**." *Id.* at 302

(emphasis added).  The Court's order therefore indicates, and I must presume, that the

Supreme Court considered Judge Hartley's findings, found Judge Hartley's review of

the record an appropriate response to the order for remand (particularly since the Court

did not again remand for further consideration), and reached its decision to deny the

Petition on the merits. *Id.* at 302.  Finally, Petitioner has not asserted that the Supreme

Court reached its decision on state court procedural grounds or on some basis other

than the merits. *See Richter* 131 S. Ct. at 784-85.

I therefore conclude that the New Mexico Supreme Court reached its decision on

the merits.  Its ruling is therefore entitled to a highly deferential standard of review.

## V.   THE STATE COURT RECORD MANDATES DISMISSAL OF THE PETITION BECAUSE PETITIONER HAS FAILED TO SHOW THAT TRIAL COUNSEL WAS INEFFECTIVE

It is unclear whether Petitioner brings his claims under 2254(d)(1) or (d)(2).  In other words, Petitioner may be arguing that the state court's denial of his claims was based upon an unreasonable application of clearly established federal law, or that its denial was based upon an unreasonable determination of facts, or both.  Therefore, I will address both potential arguments as to each ineffective assistance claim.

## A.   The State Court Reasonably Determined that Mr. Reese Was Effective Although He Failed to Raise an Insanity Defense at Trial

Petitioner's Claim Two asserts Mr. Reese was ineffective because he failed to present an insanity defense at trial.  *Doc. 1* at 7-7B.  Specifically, Petitioner argues that he was not properly treated for his pre-existing psychiatric conditions while in custody at CCADC, and "[w]hen not treated Petitioners mental illness can be aggravated leading to unforeseen and uncontrollable problems such as the assault on . . . Jason Gillette."  *Id.* at 7 (original wording).  Petitioner contends that counsel failed to review his medical records and present an insanity defense based on this lack of treatment and pre-existing mental illness at trial, citing *United States v. Ringer. Doc. 62* at 22; *Doc. 1* at 7A-7B.  In *Ringer*, the Tenth Circuit held that failure to investigate an insanity defense can constitute ineffective assistance of counsel where the defendant has a long history of mental illness.  139 F. App'x 969, 973 (10th Cir. 2005).

Mr. Reese's conduct must be evaluated with great deference to trial counsel's strategic choices. *Strickland,* 466 U.S. at 689; *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (A "doubly deferential judicial review . . . applies to a *Strickland* claim evaluated

14

under the § 2254(d)(1) standard.").  Moreover, as the Supreme Court explained in

*Harrington*, "[r]are are the situations in which the 'wide latitude counsel must have in

making tactical decisions' will be limited to any one technique or approach." 131 S. Ct.

at 789 (citation omitted).

Plaintiff's reliance on *Ringer* is misplaced for two reasons.  First, in *Ringer* the

Tenth Circuit was evaluating the federal district court's review of a § 2255 petition,

which was necessarily entitled to considerably less deference than the state court

decision at issue here.  *Compare Ringer*, 139 F. App'x. at 972 (noting that federal district

court's § 2255 legal determinations are reviewed *de novo*) *with Rosa v. Williams*, 422 Fed.

Appx. 730, 731 (10th Cir. 2011) (noting that in § 2254 cases the federal court's review of

state court's legal determinations is highly deferential).  Secondly, unlike counsel in

*Ringer,* there is no evidence that Mr. Reese, failed to *investigate* Petitioner's mental

illness.  *See Ringer*, 139 F. App'x at 973.  While Petitioner alleges that Mr. Reese failed to

investigate Petitioner's claim of mental illness (*doc. 1* at 7-7B), Mr. Reese's request for a

psychiatric evaluation demonstrates that he did conduct such an inquiry. *RP at 16-17.*

In addition, Mr. Reese was already familiar with Petitioner's psychiatric condition

because he had represented Petitioner in a 2006 criminal matter where Petitioner had

pled guilty but mentally ill.  *RP* at 113.

Instead, Plaintiff's case bears considerable resemblance to *Anderson v. Attorney*

*General of Kansas*.  There, the petitioner, who was an in-patient at a mental health facility

where he was being treated for schizophrenia, was tried and found guilty of aggravated sexual battery committed at the mental health facility.  425 F.3d 853, 854-56 (10th Cir. 2005).  In his § 2254 petition, Mr. Anderson argued that his counsel was ineffective because counsel elected to pursue the defense of failure to prove all the elements of the crime, rather than an insanity defense.  *Id.* at 855, 857.  The trial transcript showed that defense counsel, who was manifestly aware of Mr. Anderson's psychiatric condition, had made a legitimate strategic decision to pursue an alternative defense based on the potential consequences of raising an insanity defense and the difficulty of proving the elements of the type of insanity defense available. *Id.* at 860-861.  The court found counsel's decision entirely reasonable, explaining that while the introduction of evidence of petitioner's mental illness could lead to an inference that would result in a not-guilty verdict, it could equally likely undermine the defense.  *Id.* at 861.

As in *Anderson*, Mr. Reese was presented with a client whom he knew was mentally ill and potentially had an insanity defense.  The trial transcript shows that, based on the circumstances of the crime and the evidence (particularly the video of the altercation), Mr. Reese elected to argue that the prosecution had failed to make out the elements of the crime rather than raise an insanity defense.  Like the attorney in *Anderson*, Mr. Reese had a demonstrably reasonable basis for doing so: in order to be a felony, aggravated battery[6] requires the infliction of great bodily harm.  *RP* at 51.  It was

---

[6] *See* N.M. Stat. § 30-3-5 (1978), "Aggravated Battery":

entirely possible that the jury would find that Mr. Gillette's injury did not constitute great bodily harm.[7]

In contrast, "[f]or a defendant to be determined insane, the jury must find a lack of criminal responsibility because, *as a result of the illness*, the defendant did not know the nature and quality of the act and that the act was wrong, or the defendant was not capable of preventing herself from committing the act." *State v. Neely*, 819 P.2d 249, 254 (N.M. 1991). The video showed Petitioner walking up to the victim, hitting him once, and withdrawing. *RP*, Trial Video. While it is true that Mr. Reese had access to evidence showing that Petitioner is prone to psychotic episodes, (*doc. 34*, Ex. 1 at 4), it is conceivable that the seeming deliberateness of Petitioner's actions in attacking Mr. Gillette would have undercut an insanity defense. It is also possible, as in *Anderson*, that further inquiry into Petitioner's mental condition would have made the defense of insanity less, rather than more, plausible. Mr. Reese was in a unique position to evaluate that possibility, having served as Petitioner's counsel once before in a case in which Petitioner pled guilty but mentally ill.

---

A. Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another.
B. Whoever commits aggravated battery, inflicting an injury to the person which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a misdemeanor.
C. Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony.

[7] Petitioner spends a great deal of time attacking the legal basis for Mr. Reese's strategy. *See doc. 62* at 25-27. However, as he concedes, the "issue of whether an injury constitutes 'great bodily harm' is for the jury." *Id*. at 26.

Mr. Reese was faced with two trial strategies – an elements defense and an insanity defense.  Frankly, neither presented a great likelihood of success.  However, in light of the evidence presented at trial and Mr. Reese's familiarity with his client, Mr. Reese's decision to proceed with a failure to make out the elements defense was a reasonable exercise of professional judgment.  Moreover, a review of the trial transcript shows that Mr. Reese competently and ably presented his chosen defense. Because Petitioner has failed to demonstrate that Mr. Reese's representation was objectively unreasonable as required by *Strickland*, I cannot conclude that the New Mexico Supreme Court unreasonably applied, or acted contrary to, clearly established federal law in denying this Claim.

**B.    The State Court Reasonably Determined that Mr. Reese's Representation Was Not Rendered Ineffective by an Actual Conflict of Interest**

In Claim Three, Petitioner presents a vague and unsubstantiated laundry list of Mr. Reese's "conflicts of interest", arguing that these conflicts resulted in Mr. Reese providing ineffective assistance at trial.  *Doc. 1* at 9-9B.  A defendant will prevail on an ineffective assistance of counsel claim only when he demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland v. Washington*, 466 U.S. 668, 694 (1984), while a defendant can succeed on a conflict of interest claim by simply showing that "a conflict of interest actually affected the adequacy of his representation," *Cuyler v. Sullivan*, 446

18

U.S. 335, 349 (1980).  A conflict of interest under *Sullivan* "results if counsel was forced to make choices advancing other interests to the detriment of his client." *United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir.1998). When a defendant cannot point to specific facts to substantiate his conflict of interest claim, he may attack his counsel's assistance through the "general rule" of *Strickland*. *Mickens v. Taylor*, 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002).

The facts to which Petitioner points do not establish that Mr. Reese was forced to make choices advancing other interests to the detriment of Petitioner.  *See Castro v. Ward*, 138 F.3d 810, 821 (10th Cir. 1998) ("Unsubstantiated and vague allegations are insufficient to establish an actual conflict of interest.")  Moreover, the record reveals no such actual conflicts.  Instead, it reveals that Mr. Reese was an able and effective advocate at trial.  Thus, Petitioner's conflict of interest claim also fails under the *Strickland* standard as well.

Because Petitioner cannot demonstrate that Mr. Reese was rendered ineffective by any of the alleged conflicts of interest, I cannot conclude that the New Mexico Supreme Court unreasonably applied, or acted contrary to, clearly established federal law in denying this Claim.

### C.     Petitioner Has Not Rebutted Any of the State Court's Factual Determinations

While petitioner sometimes cites to and refers to 2254(d)(2) which addresses unreasonable determinations of facts by the state court, he does not point to a single fact

that he argues was unreasonably determined.  *See e.g., doc. 62* at 14, 15.  Any factual

determination by the state court is "presumed to be correct."  28 U.S.C. § 2254(e)(1).

Petitioner "ha[s] the burden of rebutting the presumption of correctness by clear and

convincing evidence."  *Id.*. This is true even when, as here, the state court's decision

lacks any explanation or analysis.  *Richter*, 131 S. Ct. at 784.  To the extent that Petitioner

is raising any challenge under 2254(d)(2), he has failed to overcome the presumption of

correctness.

**VI.   IN THE ALTERNATIVE, RESPONDENT WAIVED THE RIGHT TO BAR AN EVIDENTIARY HEARING AND THE EVIDENCE PUT FORTH AT THAT HEARING INDICATES THAT MR. REESE WAS NOT INEFFECTIVE**

### A.   Waiver of *Cullen*'s Evidentiary Hearing Bar

As described earlier, I conclude that all of Petitioner's remaining claims have

been adjudicated on the merits.  Given that conclusion, this Court would ordinarily be

barred from holding an evidentiary hearing.  In *Cullen v. Pinholster*, the Supreme Court

held that review of a § 2254(d)(1) petition was exclusively limited to the state court

record.  131 S.Ct. 1388, 1398 (2011).  The Court reasoned that, because the language of §

2254 (d)(1) is explicitly "backward-looking", the only relevant consideration for the

reviewing court is the proceedings before the state court.  *Id.* Moreover, the reasoning of

the opinion "indicates that the same is true, a fortiori, to review under § 2254(d)(2),

which explicitly states that the state-court decision must have been unreasonable 'in

light of the evidence presented in the State court proceeding.'"  *Black*, 682 F.3d at 895.

Thus, if a claim is "adjudicated on its merits" in state court, *Cullen* appears to hold that it is never appropriate for the federal court hold an evidentiary hearing when considering a habeas petition under § 2254(d).

The issue is whether or not Respondent was capable of waiving this bar to an evidentiary hearing.  The Supreme Court has defined § 2254(d) as "part of the basic structure of federal habeas jurisdiction."  *Harrington*, 131 S.Ct. at 787.  Section 2254(d), like its counterpart § 2254(b) (the exhaustion requirement), is designed to ensure that state court habeas claims are controlled primarily by the state, rather than the federal, courts.  *Id.*  Under § 2254(b), the State may waive the exhaustion requirement.  28 U.S.C. § 2254(b)(3).  It logically follows that if the State may waive one jurisdictional requirement under § 2254, it may waive other jurisdictional requirements where it seeks federal review of a state habeas action.

Having determined that waiver is possible, the issues becomes whether waiver of the evidentiary bar must be express or can it implicit.  Of course, the exhaustion requirement under § 2254(b) may only be waived expressly.  See  28 U.S.C. § 2254(b)(3)( "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.")  The fact that the statute limits waiver in one circumstance to express waiver through counsel suggests that other kinds of waivers can be by implication under the doctrine of *expressio unius est exclusio alterius*.  That doctrine holds that an

express provision in one portion of a statute suggests the intentional lack of that provision in another, similar portion of the statute. *See Elwell v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1312 (10th Cir. 2012). As the Supreme Court has explained, "the canon *expressio unius est exclusio alterius* . . . has force . . . when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (citation omitted). Sections 2254(b) and (d) are unquestionably members of an associated group. But unlike § 2254(b), § 2254(d) does not require express waiver on the part of the State. This omission justifies the inference that the State may waive the evidentiary strictures of § 2254(d) by implication alone.

In this case, I ordered supplemental briefing. *See doc. 15*. In that order, I explicitly expressed the concern that Cullen would prohibit the Court from considering additional evidence in certain circumstances. *Id.* at 9-12). Subsequently, I ordered the Respondent to brief "(1) whether the Court should grant Petitioner's request to subpoena, or to otherwise order the production of, additional documentary evidence as to his mental illness, and (2) whether an evidentiary hearing would be appropriate following a review of such documentary evidence." *Id.* at 12-13. Subsequently, Respondent provided no timely briefing on either issue, but instead filed a motion seeking an order directing Dr. Fink to release the forensic evaluation report on Petitioner. *See doc. 20*. Upon receipt of the report, Respondent filed it with the Court

22

without further discussion.  *See doc. 29*.  Not until three months after the supplemental

briefing was due did Respondent file any objection to an evidentiary hearing.  *See doc.*

*40*.  These circumstances would support a finding of waiver of the evidentiary bar.

Based upon a preliminary finding of waiver, I proceeded to hold an evidentiary

hearing.  *See doc. 34*.

B.     **The Evidence Presented at the Evidentiary Hearing Indicates that Mr.
       Reese Was Not Ineffective When He Failed to Raise an Insanity Defense
       at Trial**

As described above, based upon a review of the state court record alone,

Petitioner's ineffective assistance of counsel claims fail.  Assuming waiver of the

evidentiary bar by Respondent, I will now also consider the evidence presented at the

hearing.  With this additional evidence, I conclude that Petitioner's claims still fail.

At the evidentiary hearing, Ms. Mandel, counsel for Petitioner, extensively

questioned Mr. Reese. He explained that he had represented Petitioner on prior

occasions and was therefore familiar with Petitioner's history of mental illness.

*Evidentiary Hearing Transcript (ET)*[8] at 12:12-23, 13:3-5.  Mr. Reese stated that, based on

his familiarity with the way Petitioner's mental illness manifested, as well as the nature

of Petitioner's actions, he believed Petitioner's sanity was a non-issue at the time of the

---

[8] Citations to the "Evidentiary Hearing Transcript" or "ET" refer to the evidentiary hearing transcript
from the August 28, 2012, evidentiary hearing before this Court.  The evidentiary hearing transcript is
listed on the docket as Doc.61.

altercation. *Id.* at 19:16-24, 21:15-22:4, 42:7-16.  Mr. Reese provided a valid explanation

for his conclusions:

| | |
|---|---|
| Mr. Reese: | . . . as it came out [the nature of the altercation between Petitioner and Mr. Gillette] was clearly a different animal than in the automobile case [in which Petitioner had pled guilty but mentally ill], which again Mr. Duran was delusional. He was under the belief that he was being attacked and he got into – my recollection anyways – he got into the van and drove off to get away from his attackers – what he believed was attackers.  This [altercation with Mr. Gillette] was an entirely different animal. . . . |
| Ms. Mandel: | Now, you thought that if he were crazy, he would have kept on punching him, right? . . . |
| Mr. Reese: | If he was acting in a manner of someone who was out of control and unable to control his actions, yes. Or at least he looked in the videotape and in his actions he seemed to be very much in control. He did not run over to Mr. Gillette. He walked over.[9] |

*Id.* at 21:24-22:4, 22:18-19, 22:23-23:2.  Mr. Reese also expressed credibility concerns as to

his client's claim that Petitioner was not receiving his medication at the time of the

crime.  *Id.* at 32:3-10.

As to his choice of defense, Mr. Reese explained that in his professional opinion,

the case did not seem to involve aggravated battery because of the nature of the injury

suffered by Mr. Gillette.  *Id.* at 23:22-24:9.  Further, citing his experience with juries in

Clovis, Mr. Reese stated that he did not believe that an insanity defense would be

_____

[9] There is some debate as to whether Petitioner walked or ran over to Mr. Gillette, *see ET* at 23:3-6.

effective in that forum: "the jury was also going to see what I saw [on the DVD] and I did not see any sort of diminished capacity. . . I did not see a sanity defense. I did not see a diminished capacity defense. He looked like he was in control." *Id.* at 64:24-25, 65:7-8; *see also id.* at 61:6-10; 100:7-101:3.

Again, for counsel's performance to fall outside the bounds of professional reasonableness, Petitioner must show that "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  Mr. Reese's testimony demonstrates that he performed as any competent criminal defense attorney should: he evaluated the potential defenses, weighed the likelihood of their success, and proceeded with the defense that he believed would be the most likely to result in a favorable result for his client.  There is no indication, based on the testimony provided, that Mr. Reese's choice to decide against presenting an insanity defense rises to the level of objective unreasonableness as required by *Strickland*.  Certainly, I cannot conclude that the New Mexico Supreme Court unreasonably applied, or acted contrary to, clearly established federal law in denying this Claim.

As noted above, Petitioner argues that his claims were not adjudicated on the merits, and, thus, this Court must review his claims de novo.  If his argument were accepted, then the evidentiary hearing would have been held even in the absence of waiver by Respondent.  Having held the hearing, I am in a position to review

Petitioner's ineffective assistance claims under a *de novo* standard as well.  Even under that standard, Petitioner has failed to establish ineffective assistance of counsel for failure to present the insanity defense or for actual conflicts of interests.  Consequently, should the Court find that the *de novo* standard applies, I would recommend the Petition be denied.

### *Conclusion*

I conclude that Petitioner's two remaining claims of ineffective assistance of counsel were adjudicated on their merits by the state court.  I conclude that the state court's denial of those claims were neither contrary to, or an unreasonable application of, clearly established federal law, nor were based upon an unreasonable determination of fact.  Because my conclusions would be the same whether considering the state record alone or considering the record and the additional materials presented to this Court, there is no need to decide if Respondent implicitly waived the evidentiary bar described above.  Furthermore, even under a *de novo* review, I conclude that Petitioner has not established that he received ineffective assistance of counsel.

Wherefore, IT IS HEREBY RECOMMENDED THAT Petitioner's Petition, (*doc. 1*) be DISMISSED WITH PREJUDICE.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

26

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**